# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| State of West Virginia *ex rel.* John B. McCuskey, Attorney General,<br><br>                    Plaintiff,<br><br>v.<br><br>Express Scripts, Inc., *et al.*,<br><br>                    Defendants. | Case No.: 5:25-CV-182-JPB<br><br>Honorable John Preston Bailey |

# MEMORANDUM OF LAW SUPPORTING DEFENDANTS' PARTIAL MOTION TO DISMISS

## INTRODUCTION

The State waited over twenty years—and ignored a court-ordered deadline—before filing claims against Express Scripts that it knew about, or should have known about, for decades. That is clear from the face of the complaint, which alleges that the State has suffered injuries for at least two decades, and from the State's own litigation history, which is subject to judicial notice. The State has been litigating opioid cases since 2001, including against every alleged member of the supposed enterprise at the heart of its claims here. By 2018 and 2019, dozens of other government entities across the country, including other cities and counties in West Virginia, filed nearly identical lawsuits against pharmacy benefit managers like Express Scripts, making the same allegations the State now brings. Several of those complaints—including one by Ohio County, West Virginia, currently pending before this Court—were publicly filed over a year before the State commenced this suit. The State offers no plausible explanation for its delay, requiring dismissal of, at minimum, its claims for negligence and civil conspiracy on statute of limitations grounds.

The State's civil RICO and West Virginia Consumer Credit and Protection Act ("WVCCPA") claims should also be dismissed on the merits. The State's civil RICO claim seeks equitable relief that only the U.S. Attorney General may pursue and fails to allege an injury to its business or property beyond government expenditures on public services, which are insufficient to confer standing. Nor does the State come close to satisfying RICO's rigid proximate cause requirement, alleging numerous links in an attenuated chain of causation that depends on countless acts of third parties. The State's WVCCPA claim fails as a matter of law because the alleged conduct does not involve consumers or consumer transactions, and the State fails to plead the alleged deception with particularity as required by Rule 9(b).

1

## BACKGROUND

This is the latest of many lawsuits the State has filed regarding opioids in West Virginia. In 2001, the State sued Purdue Pharma L.P. over its manufacturing and sale of OxyContin. *See* Compl., *State ex rel. McGraw vs. Purdue Pharma, L.P., et al.*, No. 01-C-137-5 (Cir. Ct. McDowell Cnty., W.Va.) (**Exhibit 1**).[1] The State sued distributors AmerisourceBergen Drug Corporation and Cardinal Health, Inc., in 2012, and distributor McKesson Corporation in 2016. *See* Compl., *State ex rel. McGraw v. AmerisourceBergen Drug Corp., et al.*, No. 12-C-141 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 2**); Compl., *State ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 3**); Compl., *State ex rel. Morrisey v. McKesson Corp.*, No. 16-C-1 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 4**). And between 2019 and 2024, the State filed a dozen lawsuits against manufacturers, distributors, pharmacies, and consultants, asserting similar claims based on harms the State purportedly suffered from an alleged oversupply of opioids.[2]

---

[1] This complaint, and all other complaints cited in this memorandum of law, are subject to judicial notice for purposes of a motion to dismiss. *See United States ex rel. Rosales v. Amedisys N. Car., L.L.C.*, 128 F.4th 548, 554 (4th Cir. 2025) ("public records like complaints" are "matters of which a court may take judicial notice" on a motion to dismiss); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court "may properly take judicial notice of matters of public record" in deciding motion to dismiss for failure to state a claim).

[2] *See* Compl., *State ex rel. Morrisey v. Publicis Health, LLC*, No. 24-C-20 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 5**); Compl., *State ex rel. Morrisey v. Kroger Co. et al.*, No. 22-C-111 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 6**); Compl., *State ex rel. Morrisey v. McKinsey & Co.,* No. 21-C-10 (W. Va. Cir. Ct., Greenbrier Cnty.) (**Exhibit 7**); Compl., *State ex rel. Morrisey v. Rite Aid Corp. et al.*, No. 20-C-83 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 8**); Compl., *State ex rel. Morrisey v. Walgreens Boots Alliance, Inc. et al.*, No. 20-C-82 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 9**); Compl., *State ex rel. Morrisey v. CVS Pharmacy Inc. et al.*, No. 20-C-131 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 10**); Compl., *State ex rel. Morrisey v. Walmart, Inc.*, No. 20-C-132 (W. Va. Cir. Ct., Putnam Cnty.) (**Exhibit 11**); Compl., *State ex rel. Morrisey v. Purdue Pharma L.P. et al.*, No. 19-C-62 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 12**); Compl., *State ex rel. Morrisey v. Teva Pharm. USA, Inc. et al.*, No. 19-C-104 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 13**); Compl., *State ex rel. Morrisey v. Janssen Pharm., Inc. et al.*, No. 19-C-105 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 14**); Compl., *State ex rel. Morrisey v. Endo Health Solutions Inc. et al.*, No. 19-C-151 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 15**); Compl., *State ex rel. Morrisey v. Mallinckrodt LLC et al.*, No. 19-C-150 (W. Va. Cir. Ct., Boone Cnty.) (**Exhibit 16**).

Nearly all of these cases settled after they were transferred to the West Virginia Mass Litigation Panel (**MLP**).[3] Indeed, the State's litigation spree over this period caused the MLP to "ORDER[] the State" to "file any other civil action against any potential defendant, including, but not limited to, manufacturers, distributors, or pharmacies, involving the same or similar common questions of law or fact . . . **no later than September 30, 2022**." Order, *In re Opioid Litig.*, No. 19-C-9000 (W. Va. Cir. Ct., Kanawha Cnty., Sept. 19, 2022) (Transaction ID 68124687) (emphasis in original) (**Exhibit 17**) (the "MLP Order").

Notwithstanding that clear directive, the State waited *another three years*, until August 15, 2025, to file this action. It asserts claims against the same Defendants (collectively referred to as "Express Scripts") as the *Ohio County* Action, which is also pending before this Court, and which was filed in July 2024 and made public August 2, 2024. *See* Compl., *Ohio County et al. v. Express Scripts, Inc. et al.*, No. 5:24-cv-142 (N.D.W. Va.) (**Exhibit 18**).

Broadly speaking, the Defendants fall into three categories. For purposes of this brief, the "PBM Defendants" are Express Scripts, Inc.; Express Scripts Administrators, LLC; and Medco Health Solutions, Inc. ECF No. 1 ("Compl.") ¶¶28–37. The "Mail Pharmacy Defendants" are ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Specialty Distribution Services, Inc. *Id*. ¶¶38–53. And the "Miscellaneous Defendants" are Express Scripts Sales Operations, Inc.; Evernorth Health, Inc.; Evernorth Care Solutions, Inc.; Evernorth Direct Health, LLC; Evernorth Behavioral Health, Inc.; and Evernorth Sales Operations, Inc.—these are affiliated entities that the State names as Defendants, but the State does not allege that they engaged in any conduct, let alone misconduct. *Id*. ¶¶22–27, 54.

---

[3] *See* Press Release, Off. of W. Va. Att'y Gen., $7.4 Billion Settlement With Purdue Pharma and Sackler Family Finalized (June 16, 2025), https://ago.wv.gov/article/74-billion-settlement-purdue-pharma-and-sackler-family-finalized.

The crux of the complaint is that Express Scripts, as a PBM, "played a central role in fueling the opioid epidemic through a pattern of conduct that promoted the oversupply and overuse of prescription opioids," resulting in increased rates of "addiction, abuse, overdose, and death in West Virginia; black markets for diverted prescription opioids; and a concomitant rise in heroin, fentanyl, and methamphetamine abuse by individuals." *Id.* ¶¶92, 379. The State alleges that Express Scripts as a PBM "colluded with opioid manufacturers in the fraudulent promotion and oversupply of opioids" and "accepted rebates and fees in exchange for favorable formulary placement." *Id.* ¶409. The State seeks to recover actual, punitive, and exemplary damages, as well as equitable and injunctive relief, on its claims for negligence, civil RICO, violations of the WVCCPA, public nuisance, and civil conspiracy. *Id.* ¶¶411–96, VI.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal unless the complaint alleges facts that show the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). To assess state-law claims, this Court applies West Virginia law as determined by the West Virginia Supreme Court of Appeals. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998). "If the law is not entirely clear, [federal courts] must rule as it appears the state court would rule" and "should not create or expand that State's public policy." *Id.* (citation omitted).

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS THE STATE'S TIME-BARRED CLAIMS FOR NEGLIGENCE AND CIVIL CONSPIRACY.**

The State's claims for negligence and civil conspiracy are subject to a one-year statute of limitations. W. Va. Code § 55-2-12(c); *see State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 922 (W. Va. 1997) (claims for harm to "public health" are subject to the one-year statute of limitation in W. Va. Code § 55-2-12(c)); *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W. Va. 2009) (statute of limitations for civil conspiracy is the one applicable to the underlying wrong alleged). Statutes of limitations run against the State as they would any other party. *See* W. Va. Code § 55-2-19 ("Every statute of limitation, unless otherwise expressly provided, shall apply to the state."); *Kermit Lumber*, 488 S.E.2d at 908–10 (statutes of limitation run against the state regardless of the type of claim the State is asserting and even if it is asserting a right belonging to the general public). The limitations period for "all torts" begins to run "when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Dunn*, 689 S.E.2d at 264–65. "Where a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 578 S.E.2d 355, 359 (W. Va. 2003).

Although in many cases "the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury," dismissal at the pleading stage is warranted "where the relevant facts are undisputed and only one conclusion may be drawn from those facts." *Id.* at 361 (affirming dismissal on statute of limitations grounds); *see also Triple R Ranch, LLC v. Pilgrim's Pride Corp.*, 456 F. Supp. 3d 775, 779 (N.D.W. Va. 2019) (affirming dismissal in part on statute of limitations grounds "when the face of the Complaint shows the limitations periods has run") (citing *Dean v.*

5

*Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)). In deciding the motion, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Parrish v. United States*, 2019 WL 9068337, at *7 (N.D.W. Va. Nov. 27, 2019) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), "including public records like complaints," *Rosales*, 128 F.4th at 554; *see Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (district court "may clearly take judicial notice" of public records on a motion to dismiss, even when they are "neither referenced by nor integral to plaintiff's complaint").

A.    **The State Has Been On Notice Of Its Negligence And Civil Conspiracy Claims For More Than A Year.**

For the State's negligence and civil conspiracy claims to be timely, it must have discovered the basis for those claims *after* August 15, 2024 (one year before the complaint). *See Dunn*, 689 S.E.2d at 265. But the complaint repeatedly alleges that the State has suffered harm "over the past two decades." Compl. ¶372; *e.g., id.* ¶375 (alleging "massive over-shipment" of opioids to West Virginia "[b]etween 2006 and 2014"); *id.* ¶377 (alleging drug overdose deaths in West Virginia from "1999 to 2019"). And it alleges that, as early as 2018, it was "publicly" known that Express Scripts had a "unique[]" role "interact[ing] with patients, pharmacies, prescribers, and payers." *Id.* ¶183. The State's own allegations thus establish that it knew or reasonably should have known of the basis for its claims long before 2024. *See Compass Mktg., Inc. v. Flywheel Digital LLC*, 2024 WL 3292676, at *1 (4th Cir. July 3, 2024) (affirming dismissal of time-barred claims where facts alleged in the complaint show plaintiff "should have discovered" them years before it filed suit).

The State's own litigation history confirms this. The State has been pursuing opioid-related actions since 2001, when it filed its first action against Purdue. *See* **Exhibit 1**. That initial action against Purdue alerted the State to an alleged "financial relationship" between Purdue and

"Pharmacy Benefit Manager" Medco—the exact same financial relationship that now forms the basis for the State's claims here. *See* Pls' Resp. to Purdue Pharma's Mot. for Sum. J. at 12 n.22, 17, *State ex rel. McGraw vs. Purdue Pharma, L.P., et al.*, No. 01-C-137-5 (Cir. Ct. McDowell Cnty., W. Va. Oct. 4, 2004) (**Exhibit 19**); *see* Compl. ¶¶94–113; *Azima v. Del Rosso*, 2021 WL 5861282, at *3 (M.D.N.C. Dec. 10, 2021) ("consistent with the practice of courts in this circuit," taking judicial notice of prior complaints in granting motion to dismiss on statute of limitations grounds); *Guerrero v. Weeks*, 2013 WL 5234248, at *2, 4 (E.D. Va. Sept. 16, 2013) (taking judicial notice of prior complaints in dismissing time-barred claim).

By 2019, the State was in active litigation against every purported member of the alleged conspiracy in which Express Scripts was purportedly involved, including Purdue and other opioid manufacturers. *Compare* Compl. ¶262, *with supra* n.2. Those cases were consolidated in the MLP with other prescription opioid-related suits against many of the same defendants brought by various cities, counties, hospitals, and other private and public entities. *See, e.g.*, *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 859 S.E.2d 374, 379 (W. Va. 2021). The State's extensive litigation history led the MLP to "ORDER[]" the State to "file *any other civil action* against *any potential defendant* . . . **no later than September 30, 2022**." **Exhibit 17** at 2 (first emphasis added; second emphasis in original). Given the State's allegations that Express Scripts was "central" to the purported scheme between opioid manufacturers, distributors, pharmacies, and insurers, Compl. ¶¶4, 92, 361, 397, 406, 471, the State's extensive litigation against those precise entities, and the fact that the MLP ordered the State to investigate and file suit against any other potential defendant by September 2022, the State had an affirmative duty to investigate and thus either knew, or should have known, of any claims against Express Scripts by then. *See McCoy*, 578 S.E.2d at 359. These judicially noticeable facts confirm the State knew the basis for its claims

*for many years* before it brought this suit. *See Azima*, 2021 WL 5861282, at *3; *Guerrero*, 2013 WL 5234248, at *2, 4.

Lest there be any doubt, the *Ohio County* Action pending before this Court pleads the exact same negligence and civil conspiracy claims against Express Scripts. *See* **Exhibit 18** at 301–10. That complaint was filed on July 25, 2024, and made public on August 2, 2024. *See id.* at 1, 313. Yet, the State waited until August 15, 2025—more than a year after the *Ohio County* complaint was made public—to file this complaint. And the State's complaint is a mere copy-paste of the *Ohio County* complaint in many respects, including with respect to the negligence and civil conspiracy claims. *Compare* Compl. ¶418 (alleging that Express Scripts, "having facilitated and set in motion the over-use and over-supply of opioids, had a duty to use reasonable care to prevent and curtail the spreading opioid crisis"), *with* **Exhibit 18** ¶898 (alleging that "[t]he PBM Defendants, having facilitated and set in motion the over-use and over-supply of opioids, had a duty to use reasonable care to prevent and curtail the spreading opioid crisis"); *see also* Compl. ¶488 (alleging Express Scripts and "opioid manufacturers engaged in concerted action to accomplish an unlawful objective, or a lawful objective by unlawful means," through "the unfettered sale and dispensing of vast quantities of opioids"); **Exhibit 18** ¶920 (same). That fact alone is sufficient to dismiss the State's negligence and civil conspiracy claims subject to a one-year statute of limitation. *See Azima*, 2021 WL 5861282, at *3; *Guerrero*, 2013 WL 5234248, at *2, 4.

Nor was *Ohio County* the first or only public lawsuit against Express Scripts. Webb County, Texas, filed the first complaint against PBMs in 2018 in the federal prescription opioid multi-district litigation ("MDL"), alleging that PBMs, including Express Scripts, "are the gatekeepers to the vast majority of opioid prescriptions filled in the United States," "control the

majority of this country's prescriptions through their formularies," and caused nationwide harm by having "[t]heir fingerprints on nearly every opioid prescription filled" across the country. *See* Compl., *Webb County v. Purdue Pharma, L.P.*, No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018), Dkt. 1 at ¶¶16, 20, 25 (**Exhibit 20**). Shortly after the Webb County complaint was filed in 2018, Webb County's counsel publicly filed a letter to publicize the targeting of PBMs in their complaint and "describe[] in detail the nature of PBMs' role in the [alleged] scheme" with prescription opioid manufacturers. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Sept. 14, 2018), Dkt. 978-6 at 2 (**Exhibit 21**).

Webb County's allegations that Express Scripts contributed to opioid-related public nuisances echoed across dozens of other lawsuits filed on public dockets by local governments from around the country in 2018 and 2019. *See* **Exhibit 22** (listing 70 cases already filed against PBMs in 2018 and 2019); *see City of Boston v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42–44 (D. Mass. 2025) (holding that, based on these same judicially noticeable facts, the knowledge of the availability of claims against the PBMs in 2019 was widespread). Two of those lawsuits were by other communities in West Virginia—the City of Huntington and Cabell County—who filed amended complaints against PBMs, including Express Scripts, with nearly identical allegations as the State's complaint here. *See Cabell County Commission & City of Huntington v. Purdue Pharma, L.P., et al.*, Nos. 1:17-op-45053 & 1:17-op-45054 (N.D. Ohio), Dkt. No. 80 ¶¶284–300 (**Exhibit 23**); *City of Huntington, et al. v. Express Scripts Holding Co., et al.*, No. 1:18-op-45984 (N.D. Ohio), Dkt. No. 7-1 ¶86 (**Exhibit 24**). The City of Huntington's complaint from March 2018 specifically relied on information learned in the State's 2001 case against Purdue to allege that Express Scripts entities had "collud[ed] with opioid manufacturers to encourage the over-

prescription of opioids in the Municipalities," underscoring that the State's initial opioid litigation put it (and others) on notice of potential claims against PBMs. *See* **Exhibit 24** ¶¶24, 57–59, 86.

Although this Court previously denied Express Scripts' motion to dismiss the *Ohio County Action* on statute of limitations grounds, *see Ohio Cnty. Comm'n v. Express Scripts, Inc.*, 2024 WL 5701504, at *2–4 (N.D.W. Va. Dec. 23, 2024), this case is distinguishable in at least two critical respects. *First*, as noted above, the State filed its complaint more than a year after *Ohio County*, and thus there can be no doubt here that the State knew or should have known of its negligence and civil conspiracy claims more than a year before it filed this suit. *Second*, the State's extensive litigation history is a unique circumstance here that confirms the State was or should have been on notice of its claims against Express Scripts for many years before 2024, having already filed a dozen suits against numerous entities related to the alleged opioid crisis in West Virginia, including lawsuits dating back to 2001 in which the State learned about the alleged relationship between Purdue and PBMs. *See* **Exhibit 19** at 12 n.22; *supra* n.2.

## B.    The State Cannot Avoid Dismissal By Relying On Inapplicable Tolling Doctrines.

Recognizing that its claims are time-barred, the State devotes an entire section of the complaint to trying to excuse its tardiness. Compl. ¶¶393–406. It appears to invoke two theories: continuing violation and fraudulent concealment. Neither applies.

To invoke the continuing violation theory, the State must have alleged "continuing wrongful conduct." *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 124 (W. Va. 2007). "Merely establishing the continuation of the *ill effects* of an original wrongful act will not suffice." *Forshey v. Jackson*, 671 S.E.2d 748, 755 (W. Va. 2008) (emphasis added); *see Ricottilli v. Summersville Mem. Hosp.*, 425 S.E.2d 629, 632 (W. Va. 1992) (rejecting continuing tort theory because it "requires a showing of repetitious, wrongful *conduct*," not "a wrongful act with consequential

continuing *damages*" (emphasis added)). Moreover, the State cannot invoke any tolling doctrine where, as here, "a cause of action should [have] be[en] patently obvious." *Dunn*, 689 S.E.2d at 264 (quoting *Keesecker v. Bird*, 490 S.E.2d 754, 769–71 (W. Va. 1997)).

The State's invocation of the continuing violation theory fails. The State seeks to excuse its untimeliness based on allegations that it "continues to suffer significant *harm* as a result of [Express Scripts'] unlawful, wrongful, and tortious conduct." Compl. ¶393 (emphasis added). But those are exactly the kind of allegations that do "not suffice" to extend the statute of limitations, because they are focused on alleged harm, not continuing *misconduct*. *Forshey*, 671 S.E.2d at 755. And while the complaint is replete with conclusory allegations that the State engaged in "ongoing" or "continuing" conduct, Compl. ¶¶393, 394, it lacks any specific allegations of misconduct after 2017, let alone 2024. In fact, the complaint alleges that Express Scripts took "meaningful action" *in 2017* when it "launched programs aimed at *addressing* opioid overuse and abuse." *Id.* ¶¶193–94 (emphasis added). Because the complaint fails to allege that Express Scripts engaged in wrongful *conduct* within the limitations period, the continuing tort theory does not apply. *See City of Boston*, 765 F. Supp. 3d at 40 (continuing wrong doctrine did not save time-barred claims because "[t]he most recent actions alleged are remedial measures Defendants took to address the opioid epidemic, not actionable misconduct").

The State also fails to allege facts to support application of the fraudulent concealment doctrine. The State alleges without factual basis that Express Scripts concealed its purported role in causing the State's alleged injuries. Compl. ¶¶397–406. But the State fails to allege "with particularity" that Express Scripts "fraudulently concealed facts that are the basis of [its] claims" and, critically, that the State "failed to discover those facts within the statutory period . . . *despite the exercise of due diligence*." *Triple R Ranch*, 456 F. Supp. 3d at 780 (emphasis added) (dismissing

time-barred claim notwithstanding plaintiff's assertion of equitable tolling defense because plaintiff failed to allege "the circumstances of the how, when, and in what manner [defendant] fraudulently concealed its alleged wrongdoing"); *Paxton v. LVNV Funding, LLC*, 2024 WL 4262743, at *1 (4th Cir. 2024) (affirming dismissal of time-barred claim where allegations were untimely based on the face of the complaint and plaintiff's "barebones allegations" of fraudulent concealment "did not adequately establish" the timeliness of her suit).

Indeed, the State does not even *attempt* to allege its diligence or when, specifically, it discovered its claims, other than alleging that it occurred "recently." Compl. ¶¶356, 403. It conclusorily alleges only that it "could not have reasonably discovered the full extent of Express Scripts' misconduct," *id.* ¶402, "until documents revealing those facts were produced in discovery by various entities" in the MDL and "other opioid litigation," *id.* ¶356—without alleging what those documents were, when they were obtained, or why they had not previously been discovered. The Court need not credit such "barebones" allegations of fraudulent concealment, *Paxton*, 2024 WL 4262743, at *1, particularly because the plaintiffs in the *Ohio County* Action made the *exact* same allegation and still managed to bring their claims over a year before the State filed this suit. *See* Am. Compl., *Ohio County* Action, ECF 128 ¶840 ("Plaintiff[s] did not learn they had been injured by Defendants' actions . . . until only recently when documents revealing those facts were produced in discovery by various entities in [the MDL] and other opioids litigation . . . .").

The State's unsupported allegation that it could not have discovered its claims with diligence also flies in the face of (1) the State's own role litigating dozens of opioid-related lawsuits since 2001, through which the State indisputably learned about PBMs, *see* **Exhibits 1–17, 19**, (2) the complaint against Express Scripts in the *Ohio County* Action that was publicly available by August 2, 2024, **Exhibit 18**, and (3) the many other highly publicized complaints against PBMs,

including Express Scripts, long before the State filed suit. *See* **Exhibits 20–24**. No amount of fraudulent concealment can erase actual notice of the State's claims. *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 109 (4th Cir. 2018). Even *despite* alleged concealment by Express Scripts, the State's "actions to combat the opioid epidemic," combined with its own prior litigation history and "widespread scrutiny and litigation concerning the role of PBMs leave no doubt that the [State] knew or should have known of its injuries." *City of Boston*, 765 F. Supp. 3d at 42. And where, as here, "the circumstances surrounding the injury would tend to indicate one or more possible causes, a plaintiff has a *duty* to investigate the facts surrounding his or her injury and *all potential causes*." *Hardy v. 3M Co.*, --- S.E.2d ---, 2025 WL 3124155, *16 (W. Va. Nov. 7, 2025) (emphases added) (plaintiff "knew, or reasonably should have known, all relevant facts necessary to pursue his products liability claim against 3M more than two years before it was filed, even with the benefit of the discovery rule").

There is perhaps no better candidate for a cause of action to be "patently obvious [such that] the plaintiff cannot claim ignorance." *Dunn*, 689 S.E.2d at 264 (quoting *Keesecker*, 490 S.E.2d at 771). The State's untimely claims for negligence and civil conspiracy should be dismissed.[4]

## II.     THE COURT SHOULD DISMISS THE STATE'S CIVIL RICO CLAIM.

The State's civil RICO claim should be dismissed because the State seeks relief that this Court has held is not available under the RICO statute, and it has failed to plausibly allege standing or the elements of a civil RICO claim.

---

[4] Express Scripts reserves all rights to challenge other claims, beyond negligence and civil conspiracy, as time-barred by the applicable statutes of limitations.

## A.  The State Cannot Seek Equitable Relief Under The RICO Statute.

The State seeks "all legal and equitable relief as allowed by law" under the civil RICO statute, 18 U.S.C. § 1964. *See* Compl. ¶459. But only the U.S. Attorney General is authorized to seek equitable relief for civil RICO violations. *Hengle v. Treppa*, 19 F.4th 324, 353–56 (4th Cir. 2021). Bound by that precedent, this Court recently dismissed similar RICO claims seeking equitable relief against Express Scripts. *See Ohio Cnty. Comm'n*, 2024 WL 5701504, at \*7–8. It should do the same here.

## B.  The State Lacks Standing To Sue Under RICO.

To pursue a civil RICO claim, a private plaintiff must show "(1) that he has suffered injury to his business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962." *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). A civil RICO complaint must allege both "an adequate injury to business or property" and "an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged." *Id.* (citations omitted). The State's complaint fails to meet either requirement.

### 1.  The State has not plausibly alleged an injury to its business or property.

RICO requires a plaintiff to have suffered an injury to "*his* business or property." 18 U.S.C. § 1964(c) (emphasis added). "Without an injury to 'his business or property,' even a plaintiff who can prove he suffered some injury as a result of a RICO violation lacks a cause of action under this statute." *Bowen v. Adidas Am. Inc.*, 84 F.4th 166, 173 (4th Cir. 2023) (quoting 18 U.S.C. § 1964(c)). "The phrase 'business or property' does not . . . encompass all possible injuries." *Id.* Injured property must be "owned or possessed" by the plaintiff, *id.* at 176 (quoting *Property*, Webster's Third New Int'l Dictionary (1971)), and the injury must implicate a cognizable property interest.

*Tel-Instrument Elecs. Corp. v. Teledyne Indus., Inc.*, 1991 WL 87194, at *2 (4th Cir. 1991) (citation omitted).

The State alleges it has been "damaged in its business and property" in the form of (1) governmental expenditures related to public services it provided to address the "opioid epidemic," such as costs of healthcare, law enforcement, and judicial functions; (2) lost tax revenues; and (3) diminished real property values in opioid-affected neighborhoods. Compl. ¶¶454–55. But government expenditures and lost tax revenues do not constitute injuries to business or property under RICO. Government plaintiffs "cannot rely on [public] expenditures" made in their "sovereign and/or quasi-sovereign capacities" to satisfy the RICO statute because such injuries are not injuries to "business or property." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008) (government costs for "health care services," "criminal justice services," and other public services are not "damages to [] property for purposes of civil RICO standing"); *see also Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) ("'[B]usiness or property' element requires that the injury 'refer to commercial interests or enterprises.'") (citation omitted); *Town of Brookline v. Operation Rescue*, 762 F. Supp. 1521, 1522–23 (D. Mass. 1991) (town's increased police expenses are not injury to business or property).

*Canyon County* is instructive. There, the Ninth Circuit explained that "the government does not possess a property interest in the law enforcement or health care services that it provides to the public; therefore, a governmental entity is not injured in its property when greater demand causes it to provide additional public services of this type." 519 F.3d at 977. "If government expenditures alone sufficed as injury to property, any RICO predicate act that provoked any sort of governmental response would provide the government entity with standing to sue under § 1964(c)." *Id.*; *see also City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020) (following *Canyon County*).

Although the Fourth Circuit has yet to address that issue, at least one court in this circuit has adopted the principles discussed in *Canyon County*. In *West Virginia v. Moore*, the State alleged that it suffered injuries to business and property resulting from (1) improper government expenditures; (2) salary and benefits paid to the defendant; (3) the unjust enrichment of the defendant due to kickbacks; and (4) lost revenues associated with the defendant's failure to pay taxes on kickbacks. 895 F. Supp. 864, 869 (S.D. W. Va. 1995). The court rejected that argument, explaining that "RICO is [an] inappropriate" vehicle for recovering the purported losses and is not "an appropriate method for the State to use in recouping" purported lost tax revenues. *Id.* at 871–72; *see also City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 649–51, 653 (N.D. Cal. 2020) (barring local governments' RICO claims based on "the extraordinary costs of providing government services to combat the opioid epidemic").

It is also insufficient to allege that the property values of *others* decreased. *See* Compl. ¶455 (alleging "diminished real property values" in opioid-affected neighborhoods). RICO requires a plaintiff to allege damages to *its* property, not someone else's. *See* 18 U.S.C. § 1964(c). Even if property values in neighborhoods in the State decreased, that is not an injury to the State's property that qualifies for RICO standing. *See Bowen*, 84 F.4th at 176 (4th Cir. 2023) (injured property must be "owned or possessed" by the plaintiff); *City & County of San Francisco*, 491 F. Supp. 3d at 653 (city could assert only injuries to "existing real property" *owned by the city* and to its "commercial business endeavors"); *Bd. of Educ. of Joliet Township High Sch., Dist. 204 v. Publicis Health, LLC*, 2025 WL 2590381, at *3–4 (N.D. Ill. Sept. 8, 2025) (same with respect to school district). Here, the State has failed to allege any facts regarding any real property that it "owned or possessed" that has been harmed by Defendants' conduct. *Bowen*, 84 F.4th at 176. Nor

does it assert that it has suffered any kind of "commercial or mercantile" injury. *Id.* at 173. Accordingly, its RICO claim must be dismissed. *See Brandenburg*, 859 F.2d at 1187.

### 2.    The State has not plausibly alleged proximate cause.

The State also fails to plausibly allege that it was "injured . . . *by reason of*" Defendants' alleged conduct. 18 U.S.C. § 1964(c) (emphasis added). RICO's proximate cause standard is rigid: "While . . . foreseeability is an established tenet of proximate causation at common law, . . . it is not a tenet that applies in the RICO context." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018). Instead, RICO causation "turns on the *directness* of the resultant harm." *Id.* Thus, courts "should not focus on whether the harm to the RICO plaintiff was a foreseeable result of the defendant's conduct . . . but rather on the directness of the relationship between the conduct and the harm." *Id.* (cleaned up). As the Supreme Court recently explained, "[t]he key word is 'direct'; foreseeability does not cut it." *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010)). "[W]henever the plaintiff's theory of causation requires moving well beyond the first step, it cannot meet RICO's direct relationship requirement." *Id.* (quotations omitted). And no matter "what motive underlaid the conduct that caused the harm, the injury . . . cannot be contingent on or derivative of harm suffered by a different party." *Slay's Restoration*, 884 F.3d at 494.

Other courts assessing opioid-related RICO claims like the State's have concluded that there are "too many links in the chain . . . to sustain [the] direct causation" that is required under the RICO statute. *Bd. of Educ. of Joliet Township*, 2025 WL 2590381, at *4. As one court recently observed, "[b]etween the alleged predicate acts of racketeering and the claimed injury to business or property," there are multiple "independent decision makers" who sever the required causal nexus, including the "medical professional[s] who prescribed the opioids" and the individuals "who abused the[m]." *Id.*; *see San Francisco*, 491 F. Supp. 3d at 657 (dismissing opioid-related

RICO claims because the "distinct third-party conduct" of drug users "severed any continuity stemming from Defendants' predicate acts, making the relationship between those acts and the City's injury insufficiently direct").

The State's causation theory here is similarly remote, contingent, and indirect. The State acknowledges that its alleged injuries derive solely from those suffering from opioid addiction. Compl. ¶456 ("But for the opioid-addiction epidemic created by Express Scripts' conduct, West Virginia would not have lost money or property."). Its alleged derivative harms depend on a lengthy causal chain involving many intervening actors, including manufacturers, distributors, hospitals, clinics, doctors, patients, and criminal actors. While the State contends that its purported injuries "were a logical, substantial, and foreseeable" result of Express Scripts' alleged racketeering, those allegations fail RICO's directness requirement. Compl. ¶456. Because the State does not (and cannot) plausibly allege that its injuries are "sequentially the direct result" of Defendants' alleged conduct, its civil RICO claim should be dismissed. *Slay's Restoration*, 884 F.3d at 493.

## III.    THE STATE'S CONSUMER CREDIT AND PROTECTION ACT CLAIM SHOULD BE DISMISSED.

The State's WVCCPA claim should be dismissed because the alleged conduct is outside the scope of the WVCCPA, and the complaint's allegations do not come close to meeting the heightened particularity requirements of Rule 9(b).

### A.    Express Scripts' Alleged Conduct Is Not Actionable Under The WVCCPA.

To protect consumers, the WVCCPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. The WVCCPA defines consumers as "a natural person to whom a sale or lease is made in a consumer transaction" and defines "consumer transaction" as "a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose." *Id.* § 46A-6-102(2).

The WVCCPA "is essentially designed to protect consumers in the relatively common cash and credit transactions in which they engage on a regular basis." *State ex rel. McGraw v. Bear, Stearns & Co.*, 618 S.E.2d 582, 587 (W. Va. 2005). Even when the *State* brings an action under the WVCCPA, its claim is simply "providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. 3M Co. v. Hoke*, 852 S.E.2d 799, 809 (W. Va. 2020) (quoting *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995)); *see also Scott Runyan*, 461 S.E.2d at 523–24 (examining the extent to which the WVCCPA "grants to the Attorney General authority to bring lawsuits against the defendants on behalf of consumers").

The State's WVCCPA claim fails as a matter of law as to the PBM Defendants and the Miscellaneous Defendants for two reasons.

*First*, none of their alleged conduct falls within the Act's consumer protections. Instead, their alleged conduct is "so ancillary or subsidiary to the buying and selling" of products that it "does not [even] fall within the scope of the consumer-type transactions governed by the consumer protection act." *Bear, Stearns*, 618 S.E.2d at 586. In *Bear, Sterns*, the Supreme Court of Appeals of West Virginia examined whether the WVCCPA covered allegedly fraudulent and deceptive practices in the provision of investment advice. *Id.* at 585. After examining the history and purpose of the WVCCPA, the court observed that the type of consumer transactions the WVCCPA sought to address—"relatively common cash and credit transactions in which [consumers] engage on a regular basis"—"contrast sharply with the highly specialized and complex conduct involved in providing securities research and analysis as a component of investment banking." *Id.* at 587. In addition, because investment advice was "pervasively regulated" by both state and federal securities laws, the court considered it "doubtful" that the Legislature intended to provide

additional protection through W. Va. Code § 46A-6-104, which is "among the most ambiguous provisions of the consumer protection act." *Id.* at 585, 588; *see also id.* at 587 n.7 ("Significantly, the securities act appears to cover substantially the same conduct on which the Attorney General based his complaint against Defendants.").

The same rationale applies here. The State does not allege that the PBM Defendants directed any of their conduct at consumers as defined in the WVCCPA. After all, PBMs do not manufacture, market, or sell prescription medications. *In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804 (N.D. Ohio), ECF No. 1848 at 1–2 (**Exhibit 25**). The business of PBMs, which involves processing claims for insurance coverage of prescription medications on behalf of plan sponsors, is "highly specialized and complex." 618 S.E.2d at 587. The PBM Defendants do not conduct the kinds of transactions consumers engage in at all, much less ones they "engage in on a regular basis." *Id.* Rather, the PBM Defendants' customers are insurers and health-plan sponsors who provide pharmacy benefits to their members. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020). Any alleged material fraud or misrepresentations were made to these third-party payers, who are not "natural person[s] to whom a sale or lease is made in a consumer transaction." W. Va. Code § 46A-6-102(2); *see Glade Springs Vill. Prop. Owners Ass'n, Inc. v. Just. Holdings*, 2023 WL 2784814 (W. Va. Apr. 5, 2023) (utilities loan was outside the scope of the WVCCPA where debtor was an "organization, not a natural person" and therefore not a "consumer"); *Hafer v. Skinner*, 542 S.E.2d 852, 856 (W. Va. 2000) (similar). Moreover, like the investment advisors in *Bear, Sterns*, the PBM Defendants are subject to extensive regulation. *Bear, Stearns*, 618 S.E.2d at 588. West Virginia has enacted a comprehensive regulatory scheme, administered by the Office of the Insurance Commissioner, which requires that PBMs be licensed, regularly audited, and subjected to specific reporting requirements. *See* W. Va. Code § 33-51-1 *et*

*seq.* Other courts construing consumer-protection laws like the WVCCPA have held that PBMs' alleged misrepresentations to third-party payers cannot support a deceptive act or practices claim because the third-party payers with whom it interacts are not consumers. *See Hawai'i ex rel. Lopez v. CaremarkPCS Health, LLC*, 2024 WL 4625719, at *4–5 (D. Hawai'i Oct. 30, 2024); *see also LO NG Pharm. Corp. v. Express Scripts, Inc.*, 747 F. Supp. 3d 1203, 1209–10 (E.D. Mo. 2024) (applying New York law).

Similarly, the State does not allege that the Miscellaneous Defendants engage in consumer transactions subject to the WVCCPA. Indeed, the State does not allege that they engaged in any specific conduct (let alone misconduct) at all. *See* Compl. ¶¶22–27, 54. In contrast to the PBM Defendants and the Miscellaneous Defendants, the Mail Pharmacy Defendants dispense medications to individual consumers. *E.g.*, *id.* ¶197. For purposes of this motion, they do not dispute that they engage in consumer transactions subject to the WVCCPA.

*Second*, Express Scripts' alleged conduct is not actionable under the WVCCPA because any alleged misrepresentations or "unconscionable" practices do not affect consumer decision-making. To be actionable under the WVCCPA, like its federal counterpart,[5] a misrepresentation of fact must be "material" in that it "materially induces" the consumer's decision to buy. *State ex rel. McGraw v. Imperial Mktg.*, 472 S.E.2d 792, 803 (W. Va. 1996) (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 387 (1965)). Further, the WVCCPA's bar on unconscionable conduct—to the extent it even applies, *see* W. Va. Code §§ 46A-2-121, 46A-2-128, 46A-7-109 (prohibiting unconscionable consumer credit/loan agreements and debt collection practices)—

---

[5] The West Virginia Legislature's intent is for construction of the WVCCPA to be guided by interpretations of the Section 5 of the Federal Trade Commission Act.  W. Va. Code § 46A-6-101(1).

prohibits only solicitations that subject the consumer to coercive pressure to buy, *Imperial Mktg.*, 472 S.E.2d at 804.

Here, however, ordinary consumers do not and cannot make any decisions with respect to PBMs' administration of the pharmacy-benefit component of their health plans. In fact, most consumers are likely unaware of what PBMs are. *See Rutledge*, 592 U.S. at 83 (describing PBMs as "a little-known but important part of the process by which many Americans get their prescription drugs"). And although consumers can and do choose their own pharmacies, the State makes no allegation that the Mail Pharmacy Defendants engaged in unfair or deceptive conduct that would or even could induce consumers' decisions on which pharmacies to use. Thus, no alleged misrepresentation or allegedly unconscionable practice by Express Scripts can induce consumer purchases or decisions.

## B.    The State Fails To Plead Its WVCCPA Claim With Particularity.

The WVCCPA claim should also be dismissed as to all defendants because the State does not plead the purported fraud with particularity. Rule 9(b) applies to any claim sounding in fraud. *Sheridan v. Ally Fin., Inc.*, 776 F. Supp. 3d 375, 386-87 (S.D.W. Va. 2024). This Court has previously applied Rule 9(b) to WVCCPA claims where those claims sound in or allege fraud. *Boczek v. Pentagon Fed. Credit Union*, 725 F. Supp. 3d 542, 551 (N.D.W. Va. 2024); *Stanley v. Huntington Nat'l Bank*, 2012 WL 254135, at *7 (N.D.W. Va. Jan. 27, 2012). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Here, the State fails to specify the unfair, deceptive, or unconscionable acts or practices on which it bases its WVVCPA claim. Compl. ¶¶460–68. Although the State makes generalized

allegations of misrepresentations, deception, omissions, and false statements, Compl. ¶¶352–61, these conclusory assertions do not "identify the person making the misrepresentation" nor do they come close to stating "the 'who, what, when, where, and how,' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). Similarly, the State's allegations of deceptive marketing, Compl. ¶¶133–44, are wholly devoid of "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784. All of these allegations, moreover, are deficient because they are made against all Defendants as a group, without "inform[ing] each defendant of the nature of his alleged participation in the fraud." *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 794 (N.D.W. Va. 2013) (citation omitted).

The lack of any particularized allegations, and the shotgun-style pleading of Count Three, make it impossible for Express Scripts to know which allegations form the basis of the State's claim. Compl. ¶¶460–68. This is exactly the situation that Rule 9(b) intends to avoid. *Harrison*, 176 F.3d at 784 ("[T]he rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of …" (citation omitted)). The Court should dismiss the State's WVCCPA claim for failure to comply with Rule 9(b).

## CONCLUSION

The State's claims for negligence, civil conspiracy, civil RICO, and violations of the WVCCPA should be dismissed with prejudice under Rule 12(b)(6).

Dated: November 14, 2025

Respectfully submitted,

Patrick King (pro hac vice)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
700 Louisiana St., Suite 3900
Houston, TX 77002
(713) 221-7000
patrickking@quinnemanuel.com

Elisabeth Miller (pro hac vice)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com

Michael J. Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
Christopher Michel (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
christophermichel@quinnemanuel.com

*/s/ Maximillian F. Nogay*
William J. Ihlenfeld (WV Bar #7465)
Maximillian F. Nogay (WV Bar #13445)
FLANNERY GEORGALIS, LLC
400 Fort Pierpont Dr., Suite 201
Morgantown, WV 26508
(304) 308-6699
wihlenfeld@flannerygeorgalis.com
mnogay@flannerygeorgalis.com

Charles R. Bailey (WV Bar #202)
Justin C. Taylor (WV Bar #8014)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
(304) 345-4222
cbailey@baileywyant.com
jtaylor@baileywyant.com

*Attorneys for Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Express Scripts Sales Operations, Inc., Evernorth Health, Inc., Evernorth Care Solutions, Inc., Evernorth Direct Health, LLC, Evernorth Behavioral Health, Inc., and Evernorth Sales Operations, Inc.*